IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

ERIC PEREZ,

                Petitioner,

        vs.

ANTHONY J. ANNUCCI, Acting
Comissioner, New York Department of
Corrections and Community Supervision,[1]

            Respondent.

No. 9:13-cv-00384-JKS

MEMORANDUM DECISION

Eric Perez, a former New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Respondent has answered, and Perez has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 27, 2011, Perez was charged with aggravated criminal contempt, three counts of first-degree criminal contempt, three counts of second-degree criminal contempt, third-degree criminal possession of a weapon, two counts of second-degree menacing, third-degree assault, and two counts of endangering the welfare of a child after he punched his ex-wife in the face and threatened her with a knife, in violation of an order of protection.

On February 14, 2012, Perez, represented by counsel, appeared before the trial court. The prosecution conveyed a plea offer in which Perez would plead guilty to a single count of

---

[1]      Because Perez has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted for Daniel F. Martuscello, Jr., Superintendent, Coxsackie Correctional Facility.  FED. R. CIV. P. 25(c).

first-degree criminal contempt in exchange for a prison sentence between 1½ to 3 years.  The plea would cover all charges in the indictment as well as certain unspecified local court charges. The prosecutor indicated that Perez would be required to waive his right to appeal and abide by an order of protection in favor of his ex-wife.  Perez indicated that he understood the plea offer and wished to accept it.

The court then placed Perez under oath.  While under oath, Perez confirmed that he had "completely" discussed this case with his attorney and was in good physical and mental health and not under the influence of drugs or alcohol.  Although he said he had been treated for mental illness from 2001 to 2004, Perez stated that he was no longer medicated and answered in the negative when asked, "[I]s there anything about that treatment . . . and the diagnosis that was PTSD and bipolar[] that affects your ability to understand what's going on today?"  Perez likewise acknowledged that he had "enough time to talk to [his] lawyer before deciding to plead guilty" and was satisfied with his lawyer's representation.

Perez stated that he understood that, by pleading guilty, he was forfeiting his right to a jury trial with the assistance of counsel as well as his rights to hear and cross-examine the People's witnesses and to testify or to refuse to testify.  He acknowledged that his guilty plea had the same legal significance as a conviction after trial.

Perez also waived his right to appeal as a condition of his guilty plea.  He reviewed the waiver form with counsel and verified his signature on it.  The court also signed the waiver of appeal form.  Perez then stated that no one had threatened or coerced him to plead guilty and confirmed that "[i]t's my decision to plead guilty today."

The court then asked Perez whether he had violated a valid order of protection by subjecting his ex-wife to physical contact with the intent to harass, annoy, threaten or alarm. Perez acknowledged that he had violated the order of protection.  After Perez admitted that he had previously been convicted of attempted second-degree criminal possession of a weapon and had served a one-year sentence for that crime, the court adjudicated him a second felony offender.  The court accepted Perez's plea, stating, "The Court's satisfied [Perez] understands the nature of the charges, the nature of the plea and possible consequences of his plea, that he's discussed his legal rights with his attorney, that he understands that he's waiving his constitutional rights, as well as his right to appeal, that the plea is voluntary, of his own [f]ree will."

On February 28, 2012, Perez, again represented by counsel, re-appeared before the court for sentencing.  The prosecutor asked the court to impose the promised sentence, and defense counsel did not object to the pre-sentence report.  Perez then made a litany of complaints about his treatment at the Jefferson County Jail, contending that he "ha[d] been through hell in this jail."  He claimed that he had been deprived of medication for his bipolar disorder even though the jail had been informed that he required medication.  He stated, "I'm not even in the right state of mind right now, like I have been trying to get out of this jail, you know what I'm saying?"  The court responded, "You don't?  You were pretty well aware of what was going on just two weeks ago."  Perez replied, "Yes, sir."

Perez further explained, "I just felt like, like I was forced into taking a deal just so I could get out of jail, because I'm a target of the whole jail, do you understand?"  He claimed that other inmates had told him that they would kidnap his children if he went to trial.  The court then

asked Perez whether he wanted to withdraw his plea and "start over."  Perez responded, "No."
He continued to complain that there was a "fuss" over him at the jail and claimed that his mail
and phone calls were being withheld.

The court then ruled that, to the extent that Perez's complaints could be construed as a
motion to withdraw the plea, the motion was denied.  The court then imposed the promised
sentence of 1½ to 3 years' imprisonment and entered an order of protection for a period of 10
years.

On May 17, 2012, Perez moved to vacate his conviction pursuant to New York Criminal
Procedure Law ("CPL") § 440.10.  Perez argued that: 1) the trial court was biased "because of
corruption"; 2) his counsel was ineffective for failing to investigate the charges and file
discovery and speedy trial motions; 3) counsel labored under a conflict of interest because
counsel communicated with Perez's ex-wife and her military chain of command; 4) the
prosecutor violated the plea agreement; and 5) his plea was not knowing and voluntary because
he was physically abused in prison and deprived of medication for his bipolar disorder.  In
responding to the motion, the District Attorney conceded that Perez should not have pled guilty
to a local court charge in April 2012 because that charge should have been covered by his plea in
the instant case.  The District Attorney promised to move to vacate the local court judgment, but
otherwise opposed the motion.

The § 440 court denied the motion in a reasoned opinion issued on September 19, 2012.
The court found no record support for Perez's judicial bias claim and held that counsel had been
effective overall.  It likewise held that it was not a conflict of interest for counsel to
communicate with Perez's ex-wife in the course of preparing the case and that counsel was not

ineffective for failing to file a speedy trial or discovery motion.  The court also noted that the local plea entered in violation of the plea agreement in the instant case had been vacated and dismissed.  Finally, the court held that Perez "was cognizant of the plea and sentencing process and its outcome," and thus the plea was not involuntary.  Perez sought leave to appeal the denial of the motion, which the Appellate Division summarily denied on January 8, 2013.

Perez timely filed a Petition for a Writ of Habeas Corpus to this Court on March 9, 2013.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Perez raises the following seven grounds for relief: 1) his plea was unlawfully induced and unknowingly and involuntarily made; 2) he was denied the effective assistance of counsel because counsel: a) did not notify Perez that he had filed a discovery motion; b) prohibited Perez from testifying in the grand jury; c) lied to Perez about whether his ex-wife testified in the grand jury; d) displayed hostility towards Perez at the plea and sentencing; e) refused to investigate Perez's ex-wife; and f) did not assist Perez after sentence or in other cases; 3) the prosecution failed to disclose evidence favorable to Perez; 4) his conviction was based on an invalid indictment because the underlying order of protection was issued in a defective proceeding where he was arraigned without counsel; 5) the trial court and appellate court are "corrupt"; 6) he was under "collateral attack" in a family court civil proceeding; and 7) he has been subjected to cruel and unusual punishment.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.      Jurisdiction

In order for a federal court to exercise jurisdiction over a habeas petition filed by a state prisoner, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see also Peyton v. Rowe*, 391 U.S. 54, 58 (1968). At the time he filed his Petition, Perez was incarcerated at Coxsackie Correctional Facility and thus within the custody of the New York State Department of Corrections and Community Supervision.  *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (per curiam) ("[T]he habeas petition [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed.").

The Department of Corrections and Community Supervision's inmate locator website (http://nysdoccslookup. doccs.ny.gov/, Department ID Number 12-B-0676) indicates that Perez was released on supervised parole on July 30, 2013.  The website further indicates that Perez finished his term of supervised release on July 30, 2014.  *See also* Docket No. 54.  Accordingly, it appears that Perez is no longer "in custody."  Regardless of a petitioner's subsequent release, however, it is within the jurisdiction of a federal court to consider a petition for a writ of habeas corpus if the petitioner was "in custody" when his petition was filed.  *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968).  Since Perez was in custody when he filed the instant Petition, the Court retains jurisdiction over it.

Subject matter jurisdiction is, however, limited by Article III, Section 2 of the United States Constitution to cases that present a "case or controversy."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003).  For a federal court to entertain

his petition, a habeas petitioner no longer in custody must show a "concrete and continuing injury" or some "'collateral consequence[] of the conviction." *Spencer*, 523 U.S. at 7. The Supreme Court has stated a challenge to an underlying conviction itself carries the presumption that collateral, adverse consequences exist. *Id.* at 12 ("[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.'" (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)); *Carafas*, 391 U.S. at 237-38 (holding a habeas petition is not moot if there are collateral consequences resulting from a conviction, i.e., inability to serve on juries, carry out certain businesses, and a revocation of voting privileges). Accordingly, Perez's Petition has not been rendered moot by Perez's release from prison and completion of parole, and thus the Court will address it. *See Cobos v. Unger*, 534 F. Supp. 2d 400, 403 (W.D.N.Y. 2008) (citing *Sibron*, 392 U.S. at 54-56).

B.    Exhaustion

Respondent correctly contends that Perez has failed to exhaust a number of his claims. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim also must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

In his Petition before this Court, Perez appears to raise a new factual ground in support of his claim that his plea was involuntarily and unknowingly made (claim 1). Specifically, Perez

contends that he moved to withdraw his plea at sentencing, and the trial court erroneously denied that application.  Because Perez did not raise that factual ground before the state courts, the claim is unexhausted.  This unexhausted claim is also procedurally barred.  Because the claim is based on the record, it could have been raised in a direct appeal, but the record indicates that Perez did not appeal his conviction.  Consequently, Perez cannot bring a motion to vacate as to this claim.  N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").  Moreover, Perez cannot now raise this claim on direct appeal because the deadline to appeal his conviction has long expired.  *See id.* § 460.10(1)(a) (notice of appeal must be filed within 30 days of the judgment, sentence, or order sought to be appealed).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991).  A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).  A miscarriage of justice is satisfied by a showing of actual innocence.  *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).  Perez does

not claim that cause exists for his procedural default nor does he assert actual innocence. Because Perez may not now return to state court to exhaust this claim, the claim may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

As Respondent notes, Perez also did not raise to the state courts his claims that counsel was ineffective for failing to inform Perez that he filed a discovery demand, prohibiting Perez from testifying in the grand jury, displaying hostility toward Perez, and failing to assist Perez after sentence or in other cases (part of claim 2); the prosecutor withheld an exculpatory child abuse report from him (claim 3); the order of protection he violated was issued in a defective local court proceeding (claim 4); the Appellate Division was "corrupt" (part of claim 5); he is under "collateral attack" in a civil proceeding in family court (claim 6); and his sentence constitutes cruel and unusual punishment (claim 7). Accordingly, these claims are unexhausted.

Because these unexhausted claims are based on matters outside the record of his conviction, Perez could raise them as constitutional claims in a subsequent CPL § 440.10 motion. This Court could stay the Petition and allow Perez to return to state court to satisfy the exhaustion requirement as to these claims. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). However, Perez has not requested that this Court stay and hold his petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In his Petition, Perez provides no reason why he did not seek

raise these claims to the state court in either his earlier CPL § 440.10 motion or a subsequent motion.

Despite Perez's failure to exhaust a majority of his claims, this Court nonetheless may deny them on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court declines to dismiss Perez's unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

C.     Merits

Claim 1.  Involuntary and Unknowing Plea

Perez first argues that his plea was involuntarily and unknowingly made. "A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citations omitted). The standard for determining competency to stand trial and competency to plead guilty are the same. *Id*. at 399. The determination turns on whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id*. at 396 (citation omitted).

Perez argued in his § 440 motion: "Due to the degradation of my mental health due to my lack of medication and the degradation of my physical health due to the abuse of the staff and the threats I was receiving due to my case and children I was unable to understand and coherently

made a decision when I plead guilty."  In considering this claim, the § 440 court described the

following facts and ultimately rejected it:

>[Perez's] last argument is that he has a long history of psychological problems,
>which he indicates includes his status as bi-polar, a diagnosis of PTSD, and several
>suicide attempts.  This and the stressful environment at the jail as a result of alleged
>physical abuse at the hands of the jail staff impaired him mentally such that he was not
>able to understand and coherently make a decision regarding his plea.  The Judge who
>took [Perez's] plea questioned [him] extensively to insure his mental health issues did not
>affect his ability to enter a plea.  [Perez] indicated on the record that he was in good
>physical and mental health and understood what he was doing and what the consequences
>of entering a plea of guilty was.  The Judge asked [Perez] if he kn[e]w what was going to
>happen after his guilty plea, and [Perez] was cognizant of the plea and sentencing process
>and its outcome.  The Court asked questions to insure [Perez] was not coerced or forced
>into the plea arrangement and received satisfactory answers.  [Perez] then allocuted to his
>acts which gave rise to the crime of criminal contempt in the first degree in violation of
>[New York Penal Law] § 255.51-BV.
>
>[Perez] was brought before the Court two weeks later for sentencing and at that
>time he did raise issues with his treatment in the local jail.  However, these issues did not
>go to his guilt or innocence, or his inability to comprehend what was happening.
>
>[Perez] has failed to raise any issues which would move the Court to set aside the
>verdict.

As the § 440 court found, the record belies any claim that Perez's guilty plea was

involuntary, unknowing, or unintelligent.  Prior to taking his plea, the trial judge specifically

asked, "My main issue is, to make sure, is there anything about that [mental health] treatment . . .

that you had and the diagnosis that was PTSD and bipolar[] that affects your ability to

understand what's going on today?"  Perez answered in the negative.  Perez further indicated that

he was pleading freely and voluntarily and in full awareness of the rights he would be giving up.

Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal,

as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*,

431 U.S. 63, 74 (1977).

Perez argues in his Petition before this Court that his plea was involuntary and unknowing because he "was not administered [his] psychotropic medications even though [his] classification sheet had [his] diagnosis as bipolar schizophrenia with several suicide attempts." This unsupported statement is at odds with the record, however, in which Perez stated under oath that he was not on medication and was in good mental health. Perez likewise provides no support for his claim that the prosecutor conspired with jail personnel to force a guilty plea from him.

While it is true that the record does not indicate that the court conducted a full competency hearing pursuant to CPL Article 730[2] prior to accepting Perez's plea, the Due Process Clause does not require a competency hearing in every case; a hearing is required only if the court has "reasonable cause" to believe that the defendant has a mental defect rendering him incompetent. *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995); *see Pate v. Robinson*, 383 U.S. 375, 385-86 (1966) (holding that the failure of a trial court to hold a competency hearing *sue sponte* may violate due process if there is sufficient evidence to cast doubt upon a defendant's competency). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Silverstein v. Henderson*, 706 F.2d 361, 369 (2d Cir. 1983) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). "Reviewing courts [should] consider the indicia of incompetence that were before the trial judge, which may

---

[2]     New York Criminal Procedure Law § 730.30(1) states: "At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person."

include a defendant's history of erratic or irrational behavior, bizarre courtroom conduct, defense counsel's expression of doubt about the client's competence, or medical reports. *Smith v. Rock*, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) (citations omitted).

In this case, Perez gave coherent and clear responses to the court's questioning during the plea allocution. During that allocution, he confirmed that he had discussed the plea with his attorney, understood he was giving up certain rights, and had committed the charged conduct. Defense counsel did not express doubt about Perez's competence, no psychiatric reports were requested, and Perez did not exhibit any bizarre or irrational behavior which might have alerted the court to the possibility that he could not understand the proceedings or rationally aid in his own defense. Here, there are no indications, other than Perez's own assertions after the fact, that he could not understand the proceedings or assist in his own defense. Indeed, the trial court specifically inquired into Perez's history of mental illness and medication regimen prior to accepting the plea, and Perez did not request a competency hearing at any time. Accordingly, Perez cannot prevail on any challenge to his guilty plea.

Claim 2. Ineffective Assistance of Counsel

Perez also argues that his trial counsel was ineffective because counsel: a) did not notify Perez that he had filed a discovery motion; b) prohibited Perez from testifying in the grand jury; c) lied to Perez about whether his ex-wife testified in the grand jury; d) displayed hostility towards Perez at the plea and sentencing; e) refused to investigate Perez's ex-wife; and f) did not assist Perez after sentence or in other cases.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376,

1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

393-95.  Thus, Perez must show that his counsel's representation was not within the range of

competence demanded of attorneys in criminal cases, and that there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,*

474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the

petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See*

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not

address both prongs if the defendant fails on one).

    New York's test for ineffective assistance of counsel under the state constitution differs

slightly from the federal *Strickland* standard.  "The first prong of the New York test is the same

as the federal test; a defendant must show that his attorney's performance fell below an objective

standard of reasonableness."  *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People*

*v. Turner*, 840 N.E.2d 123 (N.Y. 2005)).  The difference is in the second prong.  Under the New

York test, the court need not find that counsel's inadequate efforts resulted in a reasonable

probability that, but for counsel's error, the outcome would have been different.  "Instead, the

'question is whether the attorney's conduct constituted egregious and prejudicial error such that

the defendant did not receive a fair trial.'"  *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d

584, 588 (N.Y. 1998)).  "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'"  *Id.* (quoting *Benevento*, 697 N.E.2d at 588).  "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'"  *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard.  *Turner*, 840 N.E.2d at 126.  "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall."  *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id.* at 125.

Perez's assertions of ineffective counsel fail even under the more generous New York standard.  First, Perez has forfeited review of a number of his ineffective counsel claims through his guilty plea.  It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The *Tollett* bar also applies to "ineffective assistance claims relating to events prior to the guilty plea."  *United States*

*v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996).  Accordingly, Perez has waived his challenges to counsel's failure to inform him about filing pre-plea motions, permit him to testify in the grand jury, and tell him the truth about whether his ex-wife testified in the grand jury.  *See id.*

Moreover, the record indicates that counsel provided adequate representation and, indeed, obtained a favorable disposition for Perez.  Perez pled guilty to a single class "E" felony in satisfaction of a 13-count indictment and unspecified local charges.  In exchange for his guilty plea, he received the lowest possible sentence available to a second felony offender.  *See* N.Y. PENAL LAW § 70.06(3)(e).

In any event, Perez's unforfeited ineffective assistance claims are without merit.  With respect to his claim that counsel displayed hostility towards him at plea and sentence, there is no support in the record for his bare assertion that he heard counsel mutter under his breath, "my [sic] knew you were a criminal," and "it's your family now," and Perez fails to explain how these comments, even if uttered, compelled his guilty plea.  Perez's claim that counsel refused to investigate whether his ex-wife had relationships with and restraining orders against other men fails because any evidence procured from such investigation would be irrelevant to the instant case and thus properly excluded, and Perez cannot show that counsel's failure to investigate rendered his plea involuntary.  Finally, to the extent Perez faults counsel for rendering inadequate assistance because he should not have pled guilty to the local court charge, such claim is moot because Perez raised the underlying claim in his § 440.10 motion and the District Attorney moved to vacate and dismiss the local court violation.  And to the extent that Perez claims that counsel should have assisted him in preparing his CPL § 440.10 motion, Perez cannot prevail on such claim because he was not entitled to counsel on the motion.  *See Coleman v.*

17

*Thompson*, 501 U.S. 722, 752 (1991) (no right to counsel exists in a state post-conviction proceeding); *see also Murray v. Giarratano*, 492 U.S. 1, 10 (1989).  Accordingly, Perez is not entitled to relief on any of his ineffective assistance of counsel claims.

Claim 3.  *Brady* Violation

Perez next asserts that the prosecutor should have disclosed a report of suspected child abuse that was filed against him on February 2, 2012, 12 days before his guilty plea.  In support of his claim, he submits a letter from the Jefferson County Department of Social Services ("DSS") dated December 7, 2012, which notes that Perez was notified in July 2012 that he was the subject of an investigation of suspected child abuse and informs him that the report has been "unfounded," meaning "that not enough credible evidence has been found to support the allegations that the child(ren) named in the report has/have been maltreated or abused."  Perez apparently contends that the unfounded child abuse was exculpatory to him and could have been used to impeach his ex-wife at trial.

As an initial matter, to the extent that Perez's claim involves impeachment evidence, it is foreclosed by his guilty plea.  *See United States v. Ruiz*, 536 U.S. 622, 633 (2002) ("the Constitution does not require the government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant").  As the United States Supreme Court recognized, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*."  *Id.* at 629.  And to the extent that he claims that exculpatory evidence was withheld, "the law is unsettled as to whether such evidence must be disclosed prior to entry of a guilty plea."  *Gathers v. New York*, No. 11-CV-1684, 2012 WL 71844, at *9 (E.D.N.Y. Jan. 10, 2012).  In any event, Perez's claim is without merit.

To constitute a violation under *Brady v. Maryland*, 373 U.S. 83 (1962), "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Perez's claim falls far short of meeting these requirements.

First, Perez fails to show that the child abuse report is relevant to his conviction. The DSS letter indicates that the report was initially filed on February 2, 2012. However, the crimes to which Perez pled guilty occurred on August 4, 2011—nearly six months before the alleged child abuse was reported. Although Perez suggests that his ex-wife knowingly filed a false report against him, nothing in the record indicates that his wife initiated the report or that there is a link between the indictment charges and the unfounded child abuse report. Moreover, Perez cannot demonstrate that the District Attorney suppressed the child abuse report. Although he claims that the existence of an open family court case "means that the District Attorney's office would have automatically been notified of any abuse," he provides no support for this assertion. Finally, Perez fails to show prejudice from the alleged suppression. Even accepting as true Perez's contention that his ex-wife filed a false child abuse report against him, such an act would not exonerate him for an assault he perpetrated against her six months earlier. And to the extent that such evidence could have been used to impeach her credibility, as aforementioned, Perez waived such claim through his guilty plea. Accordingly, Perez cannot prevail on his *Brady* claim.

Claim 4.  Defective Indictment

Perez additionally contends that the contempt charges in the indictment were based on an order of protection issued in a defective proceeding.  He seems to argue that the order of protection underlying his guilty plea could not be enforced because it was issued in a defective local court proceeding in which he was arraigned without counsel and outside the presence of a court reporter.

But, again, because Perez's guilty plea is valid, he is precluded from obtaining habeas relief on claims arising out of matters that occurred prior to the plea, *Tollett*, 411 U.S. at 267, and this claim must be denied, *see Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y. 2005) ("[I]f [petitioner] entered a voluntary, knowing, and intelligent guilty plea, any and all non-jurisdictional defects raised in the indictment are waived.").  In any event, his claim attacking the indictment is not cognizable on federal habeas review.  *See, e.g.*, *Brazeau v. Zon*, No. 04-CV-031, 2007 WL 2903617, at *7 (W.D.N.Y. Oct. 1, 2007) (holding that claims attacking the indictment process are not reviewable in a federal habeas action).  Perez is therefore not entitled to relief on this claim.

### Claim 5.  Corrupt Courts

Perez next argues that the trial court was "corrupt" because the trial judge allegedly stated during the plea proceedings that Perez was "going to the State to be flipped."  He argues that the trial court's corruption is further evidenced by the court's supposed knowledge of a prison "program" designed to humiliate him and endanger his children.  Perez contends that, because the Appellate Division denied his application for leave to appeal the denial of his CPL § 440 motion, the Appellate Division is also corrupt.  Finally, Perez claims that the Appellate

Division's corruption is evinced by the fact that the "blind lady of justice" does not wear her blindfold in the image of the seal on the Appellate Division order denying him leave.

In order to prevail on a claim of judicial bias, a petitioner must show that he was denied a trial or other court proceeding "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964). A state court judge is required to recuse himself for bias only if he has demonstrated "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *McMahon v. Hodges*, 382 F.3d 284, 290 (2d Cir. 2004) (holding that judge's statement that defendant would likely be convicted given evidence at co-defendant's trial did not require recusal); *see also LoCascio v. United States*, 473 F.3d 493, 496-97 (2d Cir. 2007) (per curiam) (recusal properly denied where rulings did not evidence deep-seated antagonism).

Perez fails to demonstrate judicial bias here. Nothing in the record supports his claims that the trial judge remarked that Perez would be "flipped" or that Perez was the subject of a special "program." With respect to his claim that the Appellate Division was corrupt for denying his leave application, the Supreme Court has explained that adverse judicial rulings, standing alone, are not probative of judicial bias, and this claim fails to set forth a violation of the due process clause. *Litesky*, 510 U.S. at 556 ("All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."). Moreover, there is nothing irregular

21

about the image of the seal on the back of the Appellate Division order denying Perez leave. Because none of the conduct about which Perez complains comes even close to approaching the standards required to show that he was denied a fair judicial proceeding and opportunity to seek leave to appeal, his judicial bias claim must fail.

Claims 6 & 7.  Family Court Proceeding and Cruel and Unusual Punishment

Finally, Perez argues in claim 6 that the New York family and county courts have conspired to thwart his efforts to restore his right to visit with his children by not producing him to family court for various court dates.  He similarly argues in claim 7 that he is being subjected to cruel and unusual punishment in prison because he and his children are the "subjects" of a "program . . . designed to inflict the maximum amount of physical and psychological duress."

Both of these claims pertain to the conditions of Perez's confinement and not the judgment of conviction against him.  As such, these claims are properly brought under 42 U.S.C. § 1983.  *See Peralta v. Vasquez*, 467 F.3d 98, 102 (2d Cir. 2006) ("[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." (citing *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973))).  Moreover, because it appears that Perez has been released from prison and completed his period of post-release supervision, these claims do not present a "concrete and continuing injury" and are thus moot.  *Spencer*, 523 U.S. at 7.  Perez is therefore not entitled to habeas relief on these claims.

V. CONCLUSION

Perez is not entitled to relief on any ground raised in his Petition.

22

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El,* 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 3, 2014.

        /s/ James K. Singleton, Jr.
        JAMES K. SINGLETON, JR.
        Senior United States District Judge

23